```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT

-------------------------------x
DAYS INNS OF AMERICA, INC.,    :
                               :
        Plaintiff,             :
                               :
v.                             :     Civil Action No.
                               :     3:97CV01374 (AWT)
P&N ENTERPRISES, INC. and      :
PAUL YEH,                      :
                               :
        Defendants.            :
-------------------------------x
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Days Inns of America, Inc. ("Days Inns"), brings this diversity action against defendants P&N Enterprises, Inc. ("P&N") and Paul Yeh ("Yeh"), a guarantor, seeking damages for trademark infringement, breach of contract and unjust enrichment. Days Inns moves for summary judgment on Count Eight of the Verified Complaint (the "Complaint"), which alleges that Yeh, as guarantor, is liable to Days Inns for P&N's obligation to pay liquidated damages in the amount of $214,000 and periodic payments in the amount of $2,936.35 due under its License Agreement with Days Inns. For the reasons set forth below, Days Inns' motion for summary judgment is being denied.

**I.   FACTUAL BACKGROUND**

Days Inns is a provider of guest lodging facility services. Days Inns entered into a License Agreement dated June 6, 1994 (the "License Agreement") with defendant P&N for the operation of a guest lodging facility in Meriden, Connecticut. Yeh, who is

president of P&N, signed the License Agreement on behalf of P&N. He also executed, in his individual capacity, a guaranty (the "Guaranty"), pursuant to which he personally guaranteed P&N's obligations under the License Agreement, provided that P&N's tangible net worth was less than $1,000,000 at "the time of payment or performance."

The Guaranty provides in relevant part:

> Upon default by Licensee, the undersigned will immediately make each payment and perform each obligation required of Licensee under the Agreement. . . . The undersigned waive notice of amendment of the Agreement, demand for payment or performance by Licensee, protest, notice of demand or protest, presentment and notice of presentment.
>
> The undersigned shall be liable to pay under guarantee only if at the time of payment or performance by the Licensee, the tangible net worth of Licensee shall be less than One Million Dollars ($1,000,000) as determined under generally accepted accounting principles, and shown on Licensee's balance sheet dated at or within 30 days of the time of payment or performance furnished by Licensee and certified as accurate under penalty of perjury by the chief financial and executive officers of Licensee.  If a balance sheet satisfying the foregoing standards is not provided to the Company by Licensee, then it shall be conclusively presumed that Licensee's net worth is less than One Million Dollars ($1,000,000).

(Guaranty, second and fourth paragraphs.)

On January 23, 1997, Days Inns notified P&N that it had terminated the License Agreement.  Under the circumstances of the termination, Days Inns was entitled to liquidated damages pursuant to the terms of the License Agreement.  On April 2, 2001, the court granted summary judgment against P&N on Count

Five of the Complaint, and awarded the Days Inns liquidated damages in the amount of $214,000, plus prejudgment interest at a rate of 1.5 percent per month, and reasonable attorneys' fees pursuant to the terms of the License Agreement.  The pivotal issue for purposes of the instant motion is the interpretation of the clause, found in the fourth paragraph of the Guaranty, "the time of payment or performance by the Licensee."

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, a court must respect the province of the jury.  A court, therefore, may not try issues of fact.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce &

Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge."  Anderson, 477 U.S. at 255.  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.

   Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact.  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248 (internal quotations omitted).  A material fact is one that would "affect the outcome of the suit under the governing law."  Id.  As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Id.  Thus, only a genuine issue as to those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from

being granted.  When confronted with an alleged factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses.  Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, a court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor."  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment.  Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant.  Anderson, 477 U.S. at

252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (quotations, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. See Anderson, 477 U.S. at 248, 251.

### III. **DISCUSSION**

A federal court sitting in a diversity case is bound to apply the choice of law rules of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Here, the

License Agreement provides that it will be construed in accordance with New Jersey law.  (See License Agreement ¶ 28.) Under Connecticut law, "parties to a contract generally are allowed to select the law that will govern their contract." Elgar v. Elgar, 238 Conn. 839, 850 (1996); see Reichhold Chems., Inc. v. Hartford Accident and Indem. Co., 252 Conn. 774, 788 (2000).  Accordingly, the court applies New Jersey law in construing the Guaranty.

"The well settled law of [New Jersey] is that the language of a guaranty agreement must be interpreted against [the person] who prepared the form, and at whose insistence the language was included."  Housatonic Bank and Trust Co. v. Fleming, 234 N.J. Super. 79, 82 (N.J. Super. Ct. App. Div. 1989); Monmouth Lumber Co. v. Indemnity Ins. Co. of N. Am., 21 N.J. 439, 452 (1956); St. Paul Fire and Marine Ins. Co. v. New Jersey Bank and Trust Co., 104 N.J. Super. 367, 372 (N.J. Super. Ct. Law Div. 1969); First Bank and Trust Co. v. Siegel, 36 N.J. Super. 207, 210 (Monmouth County Ct. 1955); Boorstein v. Miller, 124 N.J. Eq. 526, 530 (N.J. Ch. 1938); Connecticut Gen. Life Ins. Co. v. Punia, 884 F. Supp. 148, 155 (D.N.J. 1995).  However, this rule is tempered inasmuch as "a guaranty is a contract and must be interpreted according to its clear terms so as to effect the objective expectations of the parties."  Housatonic Bank and Trust Co., 234 N.J. Super. at 82 (N.J. Super. Ct. App. Div. 1989).  When a court

must resolve "a question as to the interpretation of a contract of guaranty . . . the rules governing the construction of contracts generally are to be referred to." First Bank and Trust Co., 36 N.J. Super. at 210.  Accordingly, the court looks to New Jersey's rules for construction of contracts in construing the terms of the Guaranty.

Generally, under New Jersey law, the terms of a contract "are to be given their plain and ordinary meaning." M.J. Paquet v. New Jersey Dep't of Transp., 171 N.J. 378, 396 (2002). However, in construing a contract or agreement, a court must attempt to "ascertain the intention of the parties to the contract as revealed by the language used," with due consideration given to "the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain." Cruz-Mendez v. ISU/Ins. Servs. of San Francisco, 156 N.J. 556, 570-1 (1999) (quotations omitted). Although "[e]vidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement," it must be disregarded if its only function is to show "not the sense of the writing, but an intention wholly unexpressed." Newark Publishers' Ass'n v. Newark Typographical Union No. 103, 22 N.J. 419, 427 (1956).  Thus, even if a party can conclusively show that the true intent of the parties to a contract differed from the intent expressed in the writing of the instrument, "[i]t is

not the real intent but the intent expressed or apparent in the writing that controls." Garfinkel v. Morristown Obstetrics & Gynecology Assoc's, 168 N.J. 124, 135 (2001) (quotations omitted).

When a court construes the meaning of contractual provisions, "[t]he general purpose of the agreement must guide [the] interpretation of its particular terms." Simonson v. Z Cranbury Assoc's, 149 N.J. 536, 539 (1997) (citing Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956)). Courts may not construe an agreement in such a manner "as to conflict with the obvious 'dominant' or 'principal' purpose of the contract." Newark Publishers' Ass'n, 22 N.J. at 426. Contracts are "to be interpreted as a business transaction entered into by practical men to accomplish an honest and straightforward end." Krosnowski, 22 N.J. at 387.

New Jersey law recognizes two types of guaranties: guaranties of payment and guaranties of collection. Guaranties of payment are essentially covenants to pay or assume or stand for a debt. See Westville Land Co. v. Handle, 112 N.J.L. 447, 452 (N.J. Sup. Ct. 1934). Under a guaranty of payment, "the party guaranteed is under no obligation to sue [the principal debtor] on the obligation guaranteed . . . and need not even notify the surety of nonpayment." Pfeiffer v. Crossley, 91 N.J.L. 433, 434-5 (N.J. Sup. Ct. 1918). To recover upon a

guaranty of payment, "the plaintiff need do no more than show the existence of the debt and that the principal debtor has not paid." Superior Fin. Corp. v. John A. McCrane Motors, Inc., 116 N.J.L. 435, 436 (N.J. 1936); see Boorstein, 124 N.J. Eq. at 530-31; Westville Land Co., 112 N.J.L. at 453; see also First Bank and Trust Co., 36 N.J. Super. at 211.  The plaintiff need not seek recovery against the principal debtor; he may bring his claim directly against the guarantor.

Guaranties of collection, however, are akin to contracts for indemnity against loss in that recovery from the guarantor may only be had "after, by the use of due and reasonable diligence, the [party guaranteed] has become unable to collect the debt from the principal debtor." Westville Land Co., 112 N.J.L. at 453 (quotations omitted).  "Generally, a guaranty of collection requires that the party guaranteed must first proceed against the principal debtor before enforcing the guaranty" against the guarantor. Connecticut Gen. Life Ins. Co., 884 F. Supp. at 153; see Boorstein, 124 N.J. Eq. at 531.  Due and reasonable diligence means that the party guaranteed must "act in good faith and . . . use ordinary care, or, to put it the other way, not to be negligent in respect to the loss for which indemnity is claimed." Trenton Banking Co. v. Kennedy, 17 N.J. Misc. 222, 225 (Mercer County Cir. Ct. 1939).  Thus, under guaranties of collection, the guarantor's liability to pay the debt does not arise until the

party guaranteed has exhausted its available avenues of recourse against the principal debtor.

Because the Guaranty contains no language specifying which type of guaranty it is, the court must look to the language of the Guaranty to determine whether it is one of payment or one of collection.  The court concludes that the Guaranty is a guaranty of payment.

The second paragraph of the Guaranty states that "[u]pon default by Licensee, the undersigned <u>will immediately make each payment and perform each obligation</u> required of Licensee under the [License] Agreement."  (emphasis added).  The clear intent expressed by this language is once the Licensee is in default, the guarantor's duty to make payments or perform obligations arises immediately, without the requirement that any other condition be satisfied.  As noted above, a guaranty of collection requires that the party guaranteed first proceed against the principal debtor, and be unable to collect from the principal debtor, before it enforces the guaranty against the guarantor. There is nothing in the language in the second paragraph of the Guaranty that even suggests an intent to require the guaranteed party to make an effort to collect from the principal debtor prior to demanding payment or performance by the guarantor.  In addition, in the last sentence of the second paragraph, the guarantor waives demand for payment or performance by the

principal debtor.  Therefore, because the language in the second paragraph of the Guaranty clearly and unambiguously expresses an intent that the guarantor perform his obligations without any condition that the guaranteed party first proceed against the principal debtor, the court concludes that the Guaranty is a guaranty of payment.

The court has considered whether there is any intent, express or apparent, in the language in the fourth paragraph of the Guaranty that the Guaranty be a guaranty of collection.  The court finds none.  The clear focus of that paragraph is setting forth the conditions under which the guarantor will not have any liability whatsoever under the Guaranty, as opposed to stating whether the guaranteed party has to first proceed against the principal debtor in the circumstance where the guarantor is liable under the Guaranty.

The fourth paragraph of the Guaranty conditions Yeh's liability to pay under the Guaranty on P&N's tangible net worth being less than $1,000,000 at "the time of payment or performance by the Licensee" and certain other conditions being satisfied. Days Inns takes the position that the "time of payment or performance by the Licensee" must necessarily be the date that judgment entered against P&N on Count Five of the Complaint.  It argues that because P&N has continuously contested its liability under the License Agreement, the "'time for payment,' if any,

-12-

would be the date that judgment entered against [P&N] for liquidated damages." (Days Inns of America Inc.'s Mem. in Sup. of Mot. for Summ. J. (Doc. No. 100), at 6). The defendants argue that "the time of payment or performance by the Licensee" should be determined with reference to the date Days Inns terminated the License Agreement.

The literal meaning of "the time of payment or performance by the Licensee" is the time at which payment or performance is actually rendered by P&N. However, the result of this literal reading of the Guaranty would be that no determination of whether Yeh was liable to make a payment under the Guaranty could ever be made until at least some portion of the payment is made by P&N.[1] Such a construction would have allowed P&N to thwart the purpose of the Guaranty, which was to provide Days Inns with recourse against Yeh, in the event that P&N defaulted in performing its obligations under the License Agreement, simply by never making any payment.

Because a literal reading would thwart the purpose of the Guaranty, the court must ascertain the intention of the parties from the language used, looking to "the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain." Cruz-Mendez, 156 N.J. at 570-71. In doing

---

[1] Also, under the circumstance where the principal debtor made the entire payment, the Guaranty would be rendered meaningless.

so, it is appropriate to consider the context in which the disputed language appears.  See Great Atl. & Pac. Tea Co., Inc. v. Checchio, 335 N.J. Super. 495, 501 (N.J. Super. 2000) ("[I]n the case of an integrated contract the judicial quest is for the reasonably certain meaning of the language used, taken as an entirety, . . . the chosen words and phrases are to be realistically assessed in relation to the context and the obvious general purpose of the compact.")(internal quotations omitted).

The two possible interpretations of the language "the time of payment or performance by the Licensee," based on the parties' contentions, are (i) the time a court determines the Licensee has an obligation to pay or perform and enters a judgment in favor of the guaranteed party against the Licensee, and (ii) the time payment or performance by the Licensee is due.  The court sees no other reasonable interpretation.

There are at least three problems with the first of these interpretations, which is that advocated by Days Inns.  First, because the Guaranty is a guaranty of payment, there is no requirement that the guaranteed party proceed against the principal debtor before enforcing the Guaranty even if the principal debtor has the ability to pay, and if the guaranteed party does not proceed against the principal debtor, there would never be a time for determining whether the guarantor is liable.  Second, if the principal debtor does not dispute its obligation

to pay but simply does not have the ability to pay, the guaranteed party would be forced to engage in a wasted effort by going through the formalities to establish that it had used due and reasonable diligence to collect from the principal debtor and was unable to do so; it especially would not want to go to the trouble of obtaining a judgment in this circumstance.  Third, the Guaranty provides that, upon default, the guarantor will immediately pay, but under this interpretation, the determination as to whether the guarantor is liable to pay would not be made until some later point in time, when the guaranteed party had obtained a judgment.  Thus, this interpretation effectively changes the meaning of the phrase in the second paragraph of the Guaranty, "[u]pon default by Licensee," so that it means "upon default by Licensee and exhaustion by the guaranteed party of efforts to collect from the Licensee."

None of these problems is present if the clause is construed to refer to the time payment or performance by the Licensee is due.  In view of the problems associated with a literal reading of the language in the Guaranty and those associated with the interpretation urged by Days Inns, and looking at the situation of the parties at the time they entered into the Guaranty, the court concludes that the intent on the part of the parties that is apparent in the writing is that the clause refer to "the time <u>for</u> payment or performance by the Licensee," the literal meaning

of which is equivalent to "the time payment or performance by the Licensee is due."

Such a construction does not undermine the purpose of the Guaranty, as the plaintiff contends. The purpose of the Guaranty was to allow Days Inns to proceed against Yeh and P&N <u>if</u>, at the "time of payment," P&N's tangible net worth was less than $1,000,000, and if P&N's tangible net worth was at least $1,000,000, proceed only against P&N. Thus it is that clear that the parties did not intend for Days Inns to have unconditional recourse against Yeh in the event P&N defaulted. Days Inns bargained for and received a conditional promise that Yeh would immediately pay or perform in the event P&N defaulted. The condition of that promise was the tangible net worth requirement. By agreeing to the tangible net worth requirement, Days Inns agreed impose a condition on its ability to proceed against Yeh under the Guaranty. The current dispute between the parties is not over whether the Guaranty is a conditional guaranty. The dispute is over the interpretation of the condition.

The plaintiff argues that, in a case where P&N has refused to pay liquidated damages, "time of payment" could not under any sensible construction be the date on which the License Agreement was terminated. However, whether a principal debtor subsequently disputes its obligation to the guaranteed party cannot be a factor in the interpretation of the language of a guaranty where

the court is required to ascertain the intention of the parties to a contract as revealed by the language used at the time they entered into the contract. Moreover, the plaintiff's argument assumes that it was required to wait to proceed against Yeh until it had obtained a judgment against P&N, and that is not the case with a guaranty of payment.

The plaintiff argues that, in ruling on the defendants' motion for summary judgment, the court rejected the defendants' position on the meaning of the term "the time of payment or performance by the Licensee," and thus a conclusion that Days Inns' interpretation of the clause is required under the doctrine of the law of the case. However, "the doctrine of law of the case permits a change of position if it appears that the court's original ruling was erroneous." DiLaura, et al. v. Power Auth. of the State of N.Y., 982 F.2d 73, 77 (2d Cir. 1992) (quotation marks omitted).

Therefore, with respect to the payments owed by P&N which the plaintiff seeks to recover from Yeh under Count Eight, the court concludes that time for determining whether Yeh is liable for each payment is the time that payment was due. The court notes that in making each determination, the terms and conditions of the License Agreement will be relevant.

IV. **CONCLUSION**

For the reasons set forth above, the plaintiff's Motion for

Summary Judgment (Doc. No. 108) is hereby DENIED.

It is so ordered.

Dated this 29th day of September 2006 at Hartford, Connecticut.

/s/AWT<br>
Alvin W. Thompson<br>
United States District Judge